# JOHN MURR

### v.

## SARAH E. GLOVER ET AL.

*Landlord and Tenant—Distress for Rent—Privity of Contract.*

1.    There can be no distress unless there has been an actual demise.

2.    Land was conveyed to a trustee with directions to pay the rent to " G." for life, and at her death convey the fee to her heirs.   " G." demised to appellant and died, and the trustee conveyed to appellees, who were her heirs.    Upon appellees' distraining for rent, it is *held:*  That the relation of landlord and tenant did not exist between appellees and appellant, and they could not distrain.

3.    Nor could appellees, in any action, recover for rent which accrued befor the death of G.

4.    Sec. 14, Chap. 80, R. S., giving the grantee, heir, etc., of the lessor the same remedies for the recovery of rent as the lessor had, can not apply where there is no privity of estate between the lessee and him who acquires the title.

[Opinion filed December 31, 1889.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

In 1858 James Roby was the owner in fee of a certain farm and premises in Will county, Illinois, comprising 391 acres of land. In September, 1858, Roby conveyed this land in fee to Edward Foster, in trust, the trustee to receive the rents and profits for the use and benefit of Harriett Glover (the then wife of John Glover), for and during her natural life, and at her death to convey the same premises to the "heirs of Harriett Glover, in fee." Prior to this conveyance in trust John Glover, the husband, had been in possession of the premises as tenant of Roby, paying rent therefor. After the conveyance, by the direction of Foster, trustee, Mrs. Glover, with her husband and family, resided upon the trust estate, her husband conducting the business by her consent. On the first of December, 1885, Mrs. Glover, her husband joining with her, by a written lease, demised to the appellant, John Murr, the whole of the trust estate, for a period of five years, commencing on March 1, 1886, and terminating on the first of March, 1891, for a gross sum of $5,000, payable in ten equal installments of $500 each, on the first days of September and March of each year during that term. Appellant took possession under the lease, paid upon the installments of rent about $805, leaving at the time of the death of Mrs. Glover as hereinafter stated, a portion of the rent accrued unpaid. On the third of November, 1887, Harriett Glover died intestate. Her husband was appointed her administrator. At her death, Mrs. Glover left her surviving her husband, John Glover, and her five children, viz.: Sarah E. Glover, Ida I. Hyland and William Glover, the appellees, James Glover, and Mary Murr, the wife of the appellant.

The appellant with wife and family were residing upon the premises as tenants, under the lease of Harriett Glover at her death, where they have since remained, cultivating and cropping the land, without paying or agreeing to pay rent there-

Murr v. Glover.

for.   On the 12th of December, 1887, Foster, the trustee, made conveyance of the trust estate to the children of Harriett Glover, above named, in fee, and delivered the same to the grantees in February, 1888.   After the death of Mrs. Glover the grantees in the deed from Foster, or some of them, notified the tenant in possession, Murr, that his lease terminated at the death of Mrs. Glover, and efforts were made to effect a lease of their several interests to appellant, Murr, but wholly without result; no new leasing or agreement concerning the occupancy or payment of rent by appellant Murr was had or effected, but appellant still continued to occupy the premises.   On the first day of September, 1888, appellees issued their distress warrant to the sheriff of Will county, which was on the day following levied upon the property of appellant, claiming as due them from appellant as rent for the said premises the sum of $838.98 due and to become due on the first day of March, 1889.   The warrant and inventory having been filed in the Circuit Court of Will County, the cause was there heard by the court, a jury being waived.   By stipulation in the trial court all formal pleadings were dispensed with, either party having the right to introduce any evidence that could be competent to make out a cause of action " *under the lease sued upon,*" or for the defendant, to establish any defense, whether in abatement or in bar, which might have been interposed under any special plea; the stipulation to take the place of all the pleadings in the case.

The court rendered a judgment for the appellees in the sum of $600, overruling a motion for a new trial, and the case is before this court on appeal from that judgment.

Messrs. C. W. BROWN and H. H. GOODRICH, for appellant.

One or two questions of law should be decisive of this case. Appellees must sustain this judgment under and by virtue of the lease, or fail upon this appeal.   There are four reasons for this position:   First.   The bill of particulars and claim of plaintiffs is for rent under the lease in question.   Second. The only proof offered of any indebtedness is under and through the lease.   Third.   The stipulation limits the right to recover upon this lease.   Fourth.   This is a proceeding by

distress, and the only demise offered in evidence is the Glover lease, and the failure to establish the relation of landlord and tenant, by a definite contract, is fatal to the right to distrain. This rule of law is so thoroughly settled as scarcely to need citation of authorities. Taylor on Landlord and Tenant, in Sec. 561, says: "There can be no distress unless there has been an actual demise at a certain fixed rent, either in money, produce or services, payable at a time certain, or unless the amount, if not fixed, is capable of being reduced to certainty by calculation." The same doctrine is held in Hatfield v. Fullerton, 24 Ill. 278; Johnson v. Prussing, 4 Ill. App. 575; Reed v. Bartlett, 9 Ill. App. 267; McGillick v. McAllister, 10 Ill. App. 40.

The case of Hoagland et al. v. Crum, 113 Ill. 365, seems to us as decisive of this appeal. Upon the main question that case is on all fours with the one at bar. These premises were leased by one having no interest higher than a life estate, and the lessor died during the leasehold term. Suit was thereafter brought by the heirs of the owner of the fee, proceeding, however, not by distress, but in an action at law for use and occupation. The court say in their opinion: "Of course the death of her who had the life estate, and who died before the end of the year, terminated defendant's right to occupy under her; and so long as he may have thereafter occupied the premises, it must have been under the heirs, who were then the owners of the fee, unincumbered by the life estate of the dowress. * * * At common law, where a tenant for life gave a lease for a term of years, rendering a yearly rent, and died in the course of the year, before the day appointed for the payment of the rent for the term of years, the rent could not be apportioned. It was for this reason the contract was an entirety. But the tenant might quit the premises, if he chose, on the death of his lessor, and paying no rent to any one for the occupation since the last day appointed for the payment of the rent. The statute (George II, Chap. 19, Sec. 15) that gave the executors or administrators of the life tenant, on whose death any lease determined, the right to recover of the tenant a ratable proportion of the rent from the last day of

payment to the date of the death of the lessor, has never been adopted by any act of our Legislature, so that, in that respect, the common law remains unchanged in this State.   There are many statutes of this State affording remedies where the common law afforded none, and this may be *casus omissus.*   At all events, it seems the law now is, if a tenant holds under one having only a life estate, if he shall quit the premises on the death of his lessor, which determined his lease, before the rent becomes due and payable, he will be liable to pay rent to no one.   * * *   But where the tenant elects to continue to occupy the premises after the determination of his lease by the death of his lessor, and the owner of the reversion acquiesces in such holding, there is no rule of law that would prevent the owner from recovering from the tenant the reasonable value for the use and occupation of the premises.   A statute of this State provides the owner may recover rent, or a fair and reasonable satisfaction, for the use and occupation of lands, where the same are held and occupied by any person without any special agreement for rent, by an action of debt or assumpsit.   * * *   That is precisely this case, so far as the defendant may have held and occupied the premises after the determination of his lease by the death of the owner of the life estate."

To the same effect is a case decided in this court at the December term, and reported in 10 Ill. App. 40—McGillick v. McAllister.   In that case the relation of landlord and tenant had existed between a stranger to the title (the lessee) and one, as landlord, who simply held as tenant by the courtesy. One of the heirs of the owner of the fee proceeded, as in this case, by distress.   Said Pleasants, J., in delivering the opinion:   "But for rent of the proportion of the land she could not lawfully distrain, either at common law or under the statute, for the reason that in respect to it McGillick (the tenant) never sustained the relation of tenant to her or to those from whom she acquired it.   * * *   Neither her mother nor her sister could have maintained it if they had been living, because he was not a tenant of either ; and she, as heir, can have, under the statute, no greater right or other remedy."

Mr. R. E. BARBER, for appellees.

If the reversion descend to the heir, he in every respect represents his ancestor, and is bound by *and has the advantage of* all conditions and covenants. The relation of landlord and tenant may be implied when one enters into possession under a lease that has expired. The fact of tenancy can not be denied if the owner seeks to enforce such a relation, as, in the case of a person holding over after his term has expired, the landlord may elect whether to hold him as a tenant or as a trespasser, and his election is binding on the person holding over. Wood's Landlord and Tenant, Sec. 2, note 7, and cases cited.

But if the heir or reversioner, expressed or implied, assents to the continuance of the occupancy by the lessee * * * a new tenancy, either at will or from year to year, springs up. Wood's Landlord and Tenant, Sec. 88. The right of distress is incident to every demise. Ib., Sec. 93; Taylor's Landlord and Tenant, Sec. 563. Mere occupation of land with the owner's concurrence may inure into a tenancy from year to year. Taylor's Landlord and Tenant, Sec. 19.

A tenant for years who holds over after the expiration of his term without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord, * * * but the tenant has no such election. * * * A tenant holding over after the expiration of his lease, with the consent of the landlord, becomes a tenant from year to year, subject to the terms and conditions of the original lease. Taylor's Landlord and Tenant, Sec. 22.

When a person grants a lease to continue beyond the period at which his own estate is to determine, as where a life tenant makes a lease to continue after his death, although the demise may be void as a lease for years, it may operate as a lease from year to year, and the instrument may be given in evidence as proof of the amount of rent to be paid and other terms upon which the lands are held. Taylor's Landlord and Tenant, Sec. 83.

The rights and liabilities of the respective parties to a

lease are not confined to the immediate parties thereto, but will be found to attach to all persons to whom the estate may be transferred, or who may succeed to the possession of the premises, either as landlord or tenants. Taylor's L. and T., Sec. 425.

As soon as the tenancy has expired the tenant ought peaceably and quietly to surrender the premises, with, etc., to the landlord or his assignee. * * * And unless the entire possession is delivered up the tenant's responsibility for rent will continue. * * *

When the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise, subject to the same rent, and to all the covenants of the original lease, so far at least as they are applicable to the new condition of things. Taylor's L. and T., Secs. 522–4 and cases cited.

Though a tenant hold under a void lease, it may still be resorted to as evidence, to make the rent for the current year certain, and so confer a right of distress upon the landlord. Taylor's L. and T., Sec. 562.

The holding over after the expiration of a lease for a year is a continuation of the former tenancy, and subjects the tenant to a distress. The right subsists, even if the lease under which the tenant holds is void; although it may be void as a lease for the term granted, it yet inures as a tenancy from year to year, and will regulate the terms on which the tenancy subsists, in all other respects, except its duration. Taylor's L. and T., Sec. 564; R. S., Chap. 80, Sec. 14, as to remedies; Edwards v. Clemons, 24 Wend. 480; Schuyler v. Leggett, 2 Cowen, 660.

Except where the terms of the holding over has been changed by the agreement of the parties, expressed or implied, the holding for each year is treated as being upon the same terms as those agreed upon for the first year's occupancy. Wood's L. and T., Sec. 21.

When a tenant holds over with any new demise, the landlord may elect to treat him as a trespasser or as a tenant holding over under the terms of the original lease. The terms

and covenants of the old lease will apply to that which is implied, so far as applicable, as the tenant has no election in the matter. It is not for him to say whether he will occupy the relation of a wrongdoer or a tenant; but the right of election belongs exclusively to the landlord, and his election binds the tenant, whatever the tenant's intentions may have been. Wood's L. and T. Sec. 13, and note 4; Conway v. Starkweather, 1 Denio, 113; see, also, Wood's L. and T., Sec. 26.

It seems that Sec. 13, Chap. 80, R. S., is in point, and conclusive of this case. We need not argue it. The lessee can not deny the title of his lessors in said lease as he took the original demise from them. So long as that term endured the appellant was bound to recognize that title.

Hoagland v. Crum, 113 Ill. 365, is a very acceptable authority to us and is entirely in harmony with appellees' argument. The form of action was " to recover for the use and occupation of the premises," and therein differed from the case at bar. Had that action been a distress for rent with same pleas and demurrer the opinion would no doubt have been the same.

In McGillick v. McAllister, 10 Ill. App. 40, had counsel gone through with the opinion we would have been quite satisfied with their argument thereon. That opinion reversed the judgment because plaintiff in distress was not in relation of landlord to defendant, and was not an heir, grantee, assignee or personal representative of the lessor Eliza, so as to come within the remedial provision of Sec. 14, Chap. 80, R. S.

The court further say in that case: "But for the rent of so much as she inherits from her father, she might distrain, since he was lessor of the plaintiff in error, and the law cast her proportion of his estate upon her."

"The statute embraces that case, and in it gives the heir of the lessor this remedy." Judgment of the court below was for $281.80, and on applying the share that defendant in error inherited from her father it only amounted to $80, which necessitated a reversal.

In case at bar the appellees are doubly fortified in their right to distrain as heirs of the original lessor under enactment of said statute, and as owners and lessors in the new demise which " sprang up" from the original lease.

Upton, P. J.   It is apparent that the appellees must sustain the judgment in the court below, if it can be sustained, by virtue of the above mentioned lease from Harriet and John Glover to the appellant.   No other demise is shown, or attempted to be shown, in the record before us.   It is well settled that there can be no distraint, unless there has been an actual demise; in other words, unless the relation of landlord and tenant exists.   Taylor's Landlord and Tenant, Sec. 561; Wood's Landlord and Tenant Sec. 542; Hatfield v. Fullerton, 24 Ill. 273; Johnson v. Prussing, 4 Ill. App. 575.

In Reed v. Bartlett, 9 Ill. App. 267, this court held that a purchaser at a foreclosure sale, although he became the owner in fee and could maintain ejectment and forcible detainer against the tenant holding under the grantors of the equity of redemption, could not *distrain for rent* against such tenant, unless the tenant had attorned to him, and that a new notice to the tenant to pay to such purchaser the rent, where the tenant does not agree to do so, or consent thereto, will not make the tenant liable to such purchaser in proceedings for the rent *by distraint,* as the relation of landlord and tenant did not exist between them.

These principles are elementary, and are too well established to warrant further discussion.   In the case at bar appellant refused to recognize the appellees, or any of the grantees of Foster, as his landlord, either by attorning to them or the payment of rent to them, or in any other manner.   Hence there was no privity established between the appellant and the appellees by any contract or agreement between them nor by virtue of the conveyance from Foster to the appellees.

True, the appellees were the children of the lessors—Harriett and John Glover—but the appellees did not take the demised premises from their father or their mother as "*their heirs,*" but took as "*the heirs of the reversion*" under the conveyance from Foster.

The term "heirs," as used in the deed from Roby to Foster, were words of description merely, designating upon whom the estate should be cast, upon the death of the beneficiary,

for life. Foster, the appellee's grantor, was not a party to the demise, or in privity with the appellant, and had no right to enforce any of the provisions thereof. There being no promise on the part of the appellant to pay the rent or any part of it to the appellees, and no privity of estate between them, we fail to see upon what ground a recovery can be sustained in this case. In Gillick v. McAllister, 10 Appt. Ct. R., this court held, that when a widower holding by the courtesy, leases and dies, a child, the heir of the deceased wife, being the heir of the reversion, *can not distrain* under such lease, not being the *heir of the lessor*.

It is not doubted that if the tenant under the demise from Mrs. Glover continued to occupy the premises demised, without attornment to the heirs of the reversion, he would be liable for the reasonable rental value of the land so occupied to such heirs, in an action for use and occupation, as might be shown by the evidence. But such heirs could not recover rent in any form of action for any time prior to the time when the estate was cast upon them by the death of Mrs. Glover, and hence the judgment of the court below was too large in any event. Hoagland v. Crum, 113 Ill. 370.

It is insisted, however, that under the provisions of Secs. 14 and 18 of Chap. 80, R. S., the appellees are entitled to recover in this action the rent in the lease from Mrs. Glover stipulated. It must be borne in mind that the appellees have no interest in any of the rents belonging to Mrs. Glover; their estate was wholly collateral to and independent of hers, and they were in no way successors to her. The trustee, Foster was powerless to rent the land for any greater length of time than the life of the beneficiary, Mrs. Glover, and had no power to rent it for the benefit of the appellees. His only trust as to them was to execute to them a conveyance at Mrs. Glover's death. Under Sec. 15, Chap. 80, R. S., appellees, as the grantees of Foster, would have no right to enforce any terms of the lease against appellant. That statute was only intended, it is believed, to apply to cases where there was a privity of estate between the lessee of the grantor, who held the title in his own right and not for separate and independent

Murr v. Glover.

uses as in the case at bar, in which such trustee simply passed the title held in trust by him, as a separate and independent trust to the grantee.

The statute creates a privity of estate between the grantee of the lessor and the lessee of the grantor, claiming under a lease made prior to the alienation, and places the grantee in the place of the original lessor as to his liability to such tenant. Thus there being a privity of estate between the parties, the statute creates a privity of contract also.' This undoubtedly is based upon the assumption that the lease was in force under section 14 of the same act, and the lessee protected in his lease, without reference to its term of duration, and the grantee of the reversion succeeded to the rights of the grantor under the lease; but that is not the case at bar. The statute referred to was intended to enforce mutuality of contracts as well as to preserve all remedies in the lease contained to both the grantee and tenant of the original lessor as well as the rights and remedies of such original lessor as to each. But in the case at bar where the grantor, Foster, if he had actually executed the lease to the appellant, instead of Mrs. Glover, such intention could not have been inferred, for in no event could Foster execute a lease for a longer term than the life of Mrs. Glover, which must have been well known to all the parties to the lease at the time of its execution.

The estate or uses of Mrs. Glover was severed from the remainder held for another use by Foster, and terminated by Mrs. Glover's death. Upon the happening of that event, the entire estate descended to the appellees, and had there been no trustee in the case, which we conceive makes no difference, the case at bar would, in our opinion, be on all fours with the case of Hoagland v. Crum et al., *supra*. The fact that there was a trustee holding the estate for separate and independent uses could not change the principle. It is more particularly illustrated in this case, where it appears the trustee, Foster, turned over the possession of the land to the life usee, Mrs. Glover, to do as she liked with it, during her life, instead of renting the land himself and paying her the rent. She then proceeded to treat the use as a legal estate and rent it in her

own right, taking upon herself its administration. This clearly shows that Foster, the trustee, had no privity of contract with appellant. That privity existed only between Mrs. Glover and her husband and the appellant. Therefore Secs. 14 and 15 of Chap. 80, *supra*, could not apply.

The only remedy appellees could have would be in a proper action against appellant for use and occupation, and not by distraint under the lease. We are not called upon to determine whether the above sections of the statute do away with the necessity of attornment, as was certainly the case before that enactment. Fisher v. Deering, 60 Ill. 114; Whiting v. Dool, 117 Mass. R. 152. In this view the judgment of the court below can not be sustained.

Besides, the judgment in the Circuit Court was based upon the rent stipulated in the lease, from September 1, 1887, to September 1, 1888. In no event could any rent have been recovered from September 1, 1887, the time at which the last installment of rent fell due, to November 3, 1887, the date of Mrs. Glover's death. Hoagland v. Crum, 113 Ill. *supra*.

For the reasons indicated the judgment of the Circuit Court must be reversed and the cause remanded for further proceedings in that court in conformity with the views hereinbefore expressed.

*Reversed and remanded.*


C. B. SMITH, J., dissents. I think the judgment of the Circuit Court was right and ought to be affirmed. The appellees had a right to maintain this action under the provisions of Sec. 14, Chap. 80, Rev. Statutes (Starr and Curtis), entitled Landlord and Tenant. This view is also supported and held in Crosby v. Loop, 13 Ill. 635.